J. G. STATON v. J. G. GODARD.

(Filed 14 October, 1908.)

**Wills, Interpretation of—Remainders—Vested Interests—Child, etc., Living.**

Property was devised to a daughter, but "should she die without child," etc., then to J., L. and E. for life, and then over. J. and the daughter intermarried and had children, who did not survive their mother. At the death of the mother: *Held*, that J. could not take a fee simple, as no interest vested in the children; this, both by interpretation of the language of the will itself and the rule in Revisal, sec. 1581, providing that, unless it is otherwise clearly expressed in the will, the children, etc., must be alive at the death of the first taker for the interest to vest in them.

CONTROVERSY submitted without action, heard before *Lyon, J.,* at June Term, 1908, of MARTIN.

Defendant appealed.

*H. W. Stubbs* for plaintiff.
No counsel *contra.*

CLARK, C. J. The sole question is the construction of the following clause in the will of Louisa Yates: "I lend and bequeath to my granddaughter, Mary Louallie Poole, during her natural life, and then to her child or children and issues,

if any, but if she should die without child or children or
issue, then this property to belong to James Grist Staton,
Louisa Staton and Ella Staton during their natural lives and
then to their child or children and issues thereof, the follow-
ing real and personal property" (describing it).

· Upon the facts agreed it appears that Mary Louallie Poole
married the plaintiff, James Grist Staton; that there were
born to said marriage three children, who died previous to
their mother, and without issue, and the mother is since dead.
The plaintiff insists that the children took a vested remainder,
that upon their death such vested remainder passed to him,
and he is entitled to the whole.

Such is not the language of the will. It provides that if
Mary Louallie "should die without child or children or issues,
then this property to belong to James Grist Staton, Louisa
Staton and Ella Staton during their natural lives," and then
over. And this was exactly what happened. The first life
tenant died without leaving any child or children or issue.
The devise to them was contingent upon their being alive at
the death of the life tenant, and was never vested in them.
At ·her death the property passed to James Grist Staton and
his two sisters as life tenants, and then over. The intent
of the will to this effect is clear. If it had been doubtful,
chapter 7, Laws 1827 (now Revisal, 1581), provides, as the
rule of construction, that a devise to one for life, with re-
mainder over upon his dying "without heirs" or "without
issue" or "without children," shall be construed to mean
dying without heirs or children or issue "living at the time
of his death" (or born to him within ten lunar months
thereafter), unless a contrary intent is "expressly and plainly
declared in the face of the deed or will."

The ruling of the court below that James Grist Staton,
upon the death of his wife, took a fee simple is

Reversed.